MIESKE *v.* HARMONY ELECTRIC CO.

1. PUBLIC SERVICE—PUBLIC UTILITIES COMMISSION—ELECTRICITY—RATES—CONTRACTS.

Rates for consumption of electrical energy, as fixed by the public utilities commission, *held*, not subject to alteration by either defendant company, which had agreed to furnish current to plaintiffs, who erected and gave five miles of electric lines to the company, at same rates as it charged its own stockholders, or plaintiffs.

2. FRAUD—ACTIONABLE FRAUD—PROMISES—FUTURE EVENTS.

Actionable fraud based on misrepresentations must relate to past or existing facts and cannot consist of mere broken promises, unfulfilled predictions, or erroneous conjectures as to future events.

3. SAME—PROMISES.

Statements promissory in their character that one will do a particular thing in the future are not misrepresentations, but are contractual in their nature, and do not constitute fraud.

4. PUBLIC SERVICE—ELECTRICITY—RATES—CONTRACTS—REFORMATION
   —ACCOUNTING—LACHES.

   Promises to reduce rates and to sell electricity to plaintiffs without profit to defendant company, made incident to execution of contract of plaintiffs to erect electric lines and pass title thereto to company *held*, promises of something to be done in the future and not misrepresentations of existing facts, hence do not form basis for declaring contract void, reforming it or requiring an accounting in suit therefor begun nearly nine years after execution of contract, during which time defendant has repaired and maintained the power line in question and taken on new customers whose rights would be affected.

5. FRAUD—PROMPT ACTION—EQUITY.

   One defrauded must act promptly on discovering the fraud as equity requires vigilance, especially where innocent parties are dealing and assuming positions in reliance upon the validity of contracts.

Appeal from Bay; Houghton (Samuel G.), J. Submitted October 9, 1936. (Docket No. 59, Calendar No. 39,138.) Decided December 8, 1936.

Bill by Gust Mieske and others against Harmony Electric Company, a corporation, to declare a contract void, and for reformation of a contract and other relief. Bill dismissed. Plaintiffs appeal. Affirmed.

*Leibrand & Leibrand,* for plaintiffs.

*Gilbert W. Hand* and *Harold J. Hand,* for defendant.

SHARPE, J. The Harmony Electric Company was incorporated in 1922. It consisted of a group of farmers and others living near the village of Auburn, in Bay county. Its purpose was to construct and maintain electric power lines and furnish electrical energy to its consumers. In 1925, another

group of farmers, the plaintiffs herein, approached the officers of the defendant company with a view to getting electricity for their farms. Following this conference a petition was circulated and signed by some of the plaintiffs and a meeting called at the township hall at which were present most of the plaintiffs and the defendant company was represented by its president and vice-president.

On December 12, 1925, the following contract was entered into between plaintiffs and defendant:

"This agreement, made by and between the undersigned residents of the township of Beaver, county of Bay and state of Michigan, witnesseth as follows:

"Each of the undersigned, in consideration of the premises and agreements of the others, hereby agrees with each of the others to furnish his or her share of the total cost of the construction of an electric power line from the power line of the Harmony Electric Company, said proposed line to be constructed from a point between sections 27 and 28 in Beaver township, county of Bay and State of Michigan.

"This line is to be constructed with material and equipment similar to that now in use by the said Harmony Electric Company on their Eight Mile Road line.

"The signers hereto agree to get together among themselves and with the assistance of the manager of the Harmony Electric Company, within ten days from date, plan on ways and means for the construction of such electric line and provide material therefor and designate one of their number as treasurer who shall have the custody of the money paid in and shall order all material used in construction of said line.

"And that each signer hereto hereby agrees that he or she will forthwith pay his or her proportionate

share of the money needed to construct said line to the one designated as treasurer.

"The signers hereto also hereby agree in case other parties, not signers, hereto, desire to connect onto part of such line proposed, that such other party, or parties, may do so on condition that they pay to the said Harmony Electric Company their *pro rata* share of the cost with 6 per cent. of the construction such proposed line over which the current will travel in going to said new parties' homes for the use of the original signers hereto. These signers will give free extension.

"That said new line, when completed, shall belong to the Harmony Electric Company.

"Signed and dated this 12th day of December, 1925.

"The Harmony Electric Company hereby agrees with each and all of the foregoing signers to the foregoing agreement that in consideration of the above named persons going ahead and constructing said proposed line, that as soon as such line is completed, it will connect the same with its power line and will furnish all of the signers to the above agreement, and others who said signers may designate, with electric current in the same manner and at the same rates as it furnishes current to its own stockholders. And said Harmony Electric Company, from the date of making connection, will assume all liability of every nature in connection with the operation, repairing and maintaining said line and will keep the same in as good repair and upkeep as it does with its own lines.

"That in the event others than the above signers desire to connect on said proposed line and pay to the Harmony Electric Company the proportionate share of the construction of said line as above agreed to, said Harmony Electric Company agrees to and with the above signers to repay said amount so received to the above original signers hereto.

"Witness the signature of the Harmony Electric Company this 12th day of December, 1925, by authority of its board of directors."

Following the signing of this contract the present plaintiffs and others built about five miles of electric line and at a cost of approximately $4,300. Upon its completion the plaintiffs were connected and the defendant company proceeded to supply them with electric current measured by meters installed upon each farm.

Since the installation of the line the plaintiffs have been furnished electrical energy and the line has been maintained by defendant company. In July, 1934, plaintiffs began the instant suit in chancery and ask that the contract be declared null and void; and that in event the court decides that the contract should be enforced as agreed upon, then plaintiffs ask that the contract be reformed to show that the new line when completed shall remain in the possession and control of defendant company, that the said company shall reduce the rates for the electric service that it supplies plaintiffs to cost, that the defendant company shall make no profits out of this new line that it does not share equally and *pro rata* with plaintiffs, and that the defendant company be required to come to an accounting with plaintiffs.

The plaintiffs' contention that the contract is void is based upon their claim that they were induced to sign the contract upon the promises of defendant company that the rates for electrical energy would be lowered and that no profit would be made by the defendant by reason of the building of the new line.

The cause came on for trial and on December 6, 1935, the trial judge dismissed plaintiffs' bill of complaint upon the theory that the claimed fraud or

misrepresentations were not established by the preponderance of evidence. Plaintiffs appeal.

We have examined the record carefully and find that since the contract was entered into the rates have been changed at least three times by the Michigan public utilities commission and with very few exceptions such rates have been reduced. Moreover, when the rates were fixed by this commission they could not be altered by either of the parties to this cause.

In 26 C. J. p. 1087, it is said, "an actionable representation must relate to past or existing facts and cannot consist of mere broken promises, unfulfilled predictions, or erroneous conjectures as to future events."

In *J. B. Colt Co.* v. *Cousino,* 226 Mich. 518, we said:

"There is no question about the general rule applying to promises made contemporaneously with the execution of a contract. It is thus stated:

" 'The false representation must be of a fact, as distinguished from statements, such as opinions and promises which are not facts.' 1 Page on Contracts (2d Ed.), § 290.

" 'A promise to do an act in the future may or may not be a contract for the breach of which damages can be recovered but mere non-performance is not fraud.' 1 Page on Contracts (2d Ed.), § 295."

In *Boston Piano & Music Co.* v. *Pontiac Clothing Co.,* 199 Mich. 141, 146, we said:

"The rule is elementary that negotiations preliminary to the execution of a written instrument may not be received to change or vary its terms. Such negotiations are merged in the written contract. When parties put their engagements in writing, such writing is the evidence of what their engagements are. If misrepresentations of material facts are made to induce the contract, and do induce it, evidence of such misrepresentations may be given

for the purpose of establishing fraud. But a promise of something to be done in the future is not a misrepresentation of an existing fact. Calling a promise a misrepresentation does not make it so. * * * Statements promissory in their character that one will do a particular thing in the future are not misrepresentations, but are contractual in their nature, and do not constitute fraud."

See, also, *National Cash Register Co.* v. *Hosier,* 251 Mich. 402.

Under the rule laid down in the above cases we are constrained to hold that the promises to reduce rates and to sell electricity to plaintiffs without profit to the defendant company were promises of something to be done in the future and were not misrepresentations of existing facts. Moreover, if we assume that the representations made were material and made for the purpose of inducing plaintiffs to sign the contract, yet the record shows that the contract was signed in December, 1925, and no suit was begun until nearly nine years later, during which time the defendant company has repaired and maintained the power line in question and has taken on new customers whose rights would be disturbed by any modification of the contract.

In *Barker* v. *Finley,* 200 Mich. 166, we said:

"One defrauded must act promptly on discovering the fraud. * * * Equity requires vigilance, some degree of promptness upon the part of those claiming to have been defrauded; and especially is this true where innocent parties are dealing and assuming positions in reliance upon the validity of contracts."

The decree of the lower court is affirmed, defendant may recover costs.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL and TOY, JJ., concurred. POTTER, J., did not sit.