ROY ANNETT, INC., *v.* KEREZSY.

1. FRAUD—REPRESENTATION OF PAST OR EXISTING FACTS.

   A representation must relate to a matter of fact, ordinarily a past or existing fact, or an alleged or existing fact, and not to the future, or future events or occurrences, in order to be actionable.

2. SAME—OPTION TO PURCHASE LAND—FUTURE USE—CONCEALMENT OF FUTURE OWNER.

   Statements made as to future use or value of premises and concealment as to probable future ownership of premises do not constitute a basis for actionable fraud that would invalidate an option to purchase land and amount of option price agreed upon was well above value fixed by expert testimony.

3. VENDOR AND PURCHASER—OPTION—ALTERATION OF INSTRUMENTS—EVIDENCE.

   Finding of trial judge that option to purchase land had not been altered as to number of lots included, as claimed by defendants, is not disturbed, where testimony on the matter was in direct conflict, original option agreement shows no alteration on its face, and sale price appears to be more likely for number of lots stated rather than smaller number, as claimed by defendants.

4. EVIDENCE—EXCEPTION TO HEARSAY RULE—SPONTANEOUS UTTERANCES.

   Hearsay testimony as to *res gestae* may be allowed in evidence, where there is a startling occasion, startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting; made before there has been time to contrive and misrepresent and must relate to the circumstances of the occurrence preceding it.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 6] 23 Am Jur, Fraud and Deceit §§ 35–37.
[4, 5] 20 Am Jur, Evidence § 662 *et seq.*
[7] 12 Am Jur, Contracts § 37.
[8] 49 Am Jur, Specific Performance § 147.

5. Same—Hearsay—Spontaneous Utterances—Telephone Conversation After Signing Option to Sell Land—Startling Occasion—Spontaneity.

Testimony as to telephone conversation which took place between defendant wife and a friend shortly after defendants had signed option to sell land which they owned was properly excluded since the occasion was not of a startling nature and utterances did not have the spontaneity required to make them admissible.

6. Specific Performance—Fraud—Future Matters—Evidence.

Exclusion of testimony of other lot owners in tract which real estate operator was seeking to assemble as to statements as to the future use of the property was proper in suit for specific performance of an option, which defendants sought to avoid because of alleged fraud in its procurement, since they would not constitute a basis for actionable fraud, even if admitted, as they related to matters of the future.

7. Vendor and Purchaser—Option—Acceptance—Refusal of Vendor to Accept Registered Letter—Additional Acts of Acceptance.

Acceptance of option by registered mail prior to expiration date as specifically required by the option was not invalidated by defendants' refusal to accept the letter or by additional steps to perfect his act of acceptance by plaintiff.

8. Specific Performance—Option—Parties.

Plaintiff company which was the only optionee named in option signed by plaintiffs had the right to bring suit for specific performance · regardless of whether the option was for the benefit of another corporation or not (CL 1948, § 612.2).

Appeal from Oakland; Golden (Clayton C.), J., presiding. Submitted January 9, 1953. (Docket No. 57, Calendar No. 45,593.) Decided March 10, 1953.

Bill by Roy Annett, Inc., against John Kerezsy and wife to compel performance of option to purchase land. Decree for plaintiff. Defendants appeal. Affirmed.

*Patterson & Patterson,* for plaintiff.

*Arthur W. Kollin,* for defendants.

Adams, J.  In the early summer of 1950, an executive of General Motors Corporation asked Roy Annett, president of the plaintiff company, to obtain options on land in the city of Pontiac which might be utilized as a site for the construction of additional factory facilities.  The General Motors Corporation was not committed to accept any of the lands so optioned but it was understood that Mr. Annett's company would be reimbursed for any money it paid out to obtain such options.  Options were to be taken in the name of the plaintiff company.

On the morning of June 28, 1950, Mr. Annett called at the home of John Kerezsy, one of the defendants and appellants.  Mr. Kerezsy was at work and after a brief visit with Mrs. Kerezsy, Mr. Annett left.  He returned again in the early evening and spent about 2 hours discussing the sale of 5 lots owned by the defendants.

The testimony is conflicting as to the conversation that took place.  Mr. and Mrs. Kerezsy say that Mr. Annett told them that an apartment house would be built on or near the property, that heavy special assessments would be levied on the property, and that a road would be put through the lots.  They further testified that Annett would not tell them who wanted to buy the property.  Defendants also testified that after an option for the purchase of 2 lots had been signed, the description of 3 additional lots was inserted in the option.  Both defendants have had little education and they said that they neither read the option nor understood its legal significance.

Annett, on the other hand, testified that the option as originally drawn described 5 lots, was read aloud by him and then individually read by each of the defendants and thereafter signed.  He denied making any statements about special assessments or roads but was not sure whether he had said anything

as to the possible construction of an apartment house on the property.

After signing the option, the defendants signed an agreement to pay the company $62.50 as a commission in the event the option was accepted prior to the expiration date of September 28, 1950. Annett then delivered a company check to the Kerczsys in the amount of $50 as payment for the option. At his suggestion they indorsed the check and he cashed it out of his personal funds.

Within a day or so afterwards, the Kerezsys attempted to give the money back to Annett and obtain cancellation of the option, but Annett declined. Subsequently and just prior to the expiration date, the plaintiff company gave notice of its intention to accept the option. Tender was made and refused and this action then commenced for specific performance.

Upon trial, the court found a valid option and a proper acceptance and decreed specific performance. From that decree defendants appeal.

It is the claim of the defendants that the option is not valid and therefore should not be enforced because it was induced by the false and fraudulent statements of Mr. Annett. Those statements, according to the record, made reference to what would happen to the property in the future. It is a generally accepted rule that "in order that there be actionable fraud, the representation must relate to a matter of fact. Further, it must, ordinarily, relate to a past or existing fact, or an alleged past or existing fact, and not to the future, or future events or occurrences." 37 CJS, p 222.

"An actionable representation must relate to past or existing facts and cannot consist of mere broken promises, unfulfilled predictions, or erroneous conjectures as to future events." 26 CJ, p 1087, as quoted with approval in *Mieske* v. *Harmony Electric Co.*, 278 Mich 61, 66.

"The general rule, which is supported by numerous decisions in almost all American and British jurisdictions, is that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on representations or statements which involve mere matters of futurity or things to be done or performed in the future." 23 Am Jur, p 794.

The record does not disclose any alleged misstatements of past or present fact. Accepting defendants' version of the conversation as true, Annett spoke only of those things which might happen in the future. Actually there is nothing in the record to indicate that apartments may not still be built in the area, that a road may be constructed through the property or that at some time in the future special assessments may be levied. Admittedly, the interest of General Motors in the property was not disclosed, but such concealment was of a possible future contingency. General Motors Corporation had not committed itself to the purchase of the property and there existed the possibility that it would decide upon some other available site for the building of a factory. Nor does the record show that defendants received less than the market value of the property. As a matter of fact, the option price was considerably above the value fixed by expert testimony. Assuming that statements were made as to the future use or value of the premises and that the probable future ownership of the property was concealed, we are of the opinion that neither constituted a basis for actionable fraud that would invalidate the option.

Defendants further claim that the written option was substantially altered after it was signed by adding the description of 3 lots. Here we must depend upon the credibility of the witnesses. Roy Annett says that all 5 lots were described in the original draft. The issue of fact was fairly presented to the trial judge who had before him the witnesses and

who was in a favored position to pass on their credibility. Apparently he chose to believe Mr. Annett. No doubt he was influenced by the fact that the original option agreement on its face shows no alteration; that one of the duplicate carbon copies, while indistinct, shows portions of the disputed description; that the sale price of the property appears to be the more likely sale price of 5 lots than of 2, and that the defendants, though claiming not to have read the option, nevertheless were certain that it mentioned only 2 lots.

Defendants claim error in the exclusion of testimony relating to a telephone conversation, between Mrs. Kerezsy and a friend, that took place immediately after Mr. Annett left the home. It is their claim that the telephone conversation was admissible as a part of the *res gestae*.

"It is well established by the authorities that the only conditions upon which such statements will be allowed in evidence are (1) that there is a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it." *Rogers* v. *Saginaw-Bay City Railway Co.*, 187 Mich 490, citing 3 Wigmore on Evidence, § 1750 *et seq.*

We believe that the statements made by Mrs. Kerezsy in a telephone conversation were not properly admissible under this exception to the general hearsay rule for 2 reasons. First, because the record indicates no startling occurrence which should have produced nervous excitement and spontaneous and unreflecting utterances. The parties met in the Kerezsy home and no unusual incident occurred. They discussed the sale of the lots for approximately 2 hours and certain papers were signed. While it

may be that the sale of the lots was a unique experience in the lives of the Kerezsys, it certainly cannot be said that the conversation and subsequent signing of instruments is a sufficiently startling occurrence to justify an exception to the hearsay rule.

Secondly, Mrs. Kerezsy's decision to call her friend after the contract was signed robbed her utterances of the spontaneity required to make such statements admissible in evidence.  Such statements are deemed to have probative value because they are made while the person is still dominated by nervous excitement and while reflective powers are yet in abeyance.  6 Wigmore on Evidence (3d ed), § 1750.  The subsequent telephone conversation was not of such spontaneous and unreflecting character as to justify an exception to the general rule.  We believe it was properly excluded.

Defendants claim further error in the exclusion of testimony by other lot owners who sought to testify as to conversations with Mr. Annett similar to that which took place in the Kerezsy home.  Had such testimony been taken it would, according to defendants, have shown that Mr. Annett made statements as to the future use of their property of the same general nature as that told to defendants.  Because such statements do not constitute a basis for actionable fraud, they would be of no assistance in showing a fraudulent intent on the part of Annett and their exclusion was proper.

It is the further claim of the defendants that the acceptance of the option was not made in accordance with its terms.  We attach no significance to this claim since the record clearly shows that acceptance was made by registered mail prior to the expiration date as specifically required by the option.  Defendants refused to accept the letter but they cannot now take advantage of their attempt to obstruct acceptance.  *O'Toole & Nedeau Co.* v. *Boelkins,* 254

Mich 44. The fact that plaintiff took additional steps to perfect his act of acceptance does not in any way affect the validity of those acts done in precise performance of the acceptance provisions.

Defendants also claim that specific performance of the option should be denied because the plaintiff is not the real party in interest. Annett testified that he was obtaining options on several parcels of land in behalf of General Motors but that General Motors was not committed to any particular site and at most had agreed to reimburse the plaintiff company for the cost of the options obtained. To quote CL 1948, § 612.2 (Stat Ann § 27.654), is an answer to this claim.

"Every action shall be prosecuted in the name of the real party in interest, but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party expressly authorized by statute, may sue in his own name without joining with him the party for whose benefit the action is brought."

Obviously, plaintiff company had the right to bring this action for specific performance regardless of whether the option was for the benefit of General Motors Corporation or not (*Brady* v. *Botkin,* 269 Mich 642) because it alone was named as the optionee.

The decree is affirmed, costs to appellee.

Dethmers, C. J., and Butzel, Carr, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.