HI-WAY MOTOR COMPANY v INTERNATIONAL HARVESTER
COMPANY

1. FRAUD—ACTIONABLE FRAUD—ELEMENTS—BURDEN OF PROOF.

The following facts must be found to exist and be proved with a
reasonable degree of certainty to establish actionable fraud: (1)
that defendant made a material misrepresentation; (2) that it
was false; (3) that when he made it he knew it was false, or
made it recklessly, without any knowledge of its truth and as a
positive assertion; (4) that he made it with the intention that it
should be acted upon by plaintiff; (5) that plaintiff acted in
reliance upon it; and (6) that he thereby suffered injury; the
absence of any one is fatal to recovery.

2. FRAUD—MISREPRESENTATION—CONTRACTS—FUTURE PROMISES.

Statements promissory in their character that one will do a
particular thing in the future are not misrepresentations, but
are contractual in their nature and do not constitute fraud.

3. FRAUD—MISREPRESENTATION—PAST OR EXISTING FACTS—FUTURE
PROMISES—CONJECTURE.

A misrepresentation actionable in fraud must relate to past or
existing facts and cannot consist of mere broken promises,
unfulfilled predictions, or erroneous conjectures as to future
events.

4. FRAUD—MISREPRESENTATION—CONTRACT—INTENTION TO PERFORM
—EVIDENCE—FRAUDULENT INTENT.

The nonperformance of a promise is not fraud nor is it any
evidence of fraud; therefore, an alleged promise to grant an
exclusive franchise cannot be found to have been made without
intention to perform where defendant denied that he made
such promises and there was no evidence presented showing it
was made with a fraudulent intent.

Appeal from Alpena, Philip J. Glennie, J. Sub-

REFERENCES FOR POINTS IN HEADNOTES
[1] 37 Am Jur 2d, Fraud and Deceit § 12.
[2–4] 37 Am Jur 2d, Fraud and Deceit §§ 1–5.

mitted Division 3 December 4, 1974, at Grand Rapids. (Docket No. 19005.) Decided March 11, 1975. Leave to appeal granted, 394 Mich 815.

Complaint by Hi-Way Motor Company and William J. Pinkerton, Sr., against International Harvester Company for damages resulting from alleged fraudulent misrepresentations and a rescission of a franchise agreement. Judgment for plaintiffs. Defendant appeals and plaintiffs cross-appeal. Reversed.

*Gillard, Bauer & Mazrum,* for plaintiff.

*Dickinson, Wright, McKean & Cudlip* (by *John E. S. Scott),* for defendant.

Before: T. M. BURNS, P. J., and QUINN and O'HARA,* JJ.

T. M. BURNS, P. J. This case involves an action by plaintiffs for damages allegedly sustained by reason of a termination by plaintiffs of a franchise agreement with defendant company. Plaintiffs have proceeded in this action on the basis of rescission.

Plaintiff Hi-Way Motor Company is incorporated in this state for the express purposes of selling automobiles, trucks and maintaining a service department. Plaintiff William John Pinkerton, Sr., is president of the company, and prior to holding that office was an attorney and corporation executive for many years.

Defendant maintains a nationwide system of dealerships, which market a variety of automotive products in addition to other machinery and equipment. These products include a complete line of trucks available for a variety of purposes, includ-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ing so-called "light trucks" and "heavy-duty" trucks. Its "heavy-duty" truckline has many different types of trucks including one particular line designated as "Fleetstar A". It is the granting of a franchise for this "Fleetstar A" line to another dealership that has created the controversy in this case.

In the general geographic area around Alpena County, there are three other dealers who were, prior to the time that plaintiff entered into its franchise agreement, authorized to sell certain International Harvester products, but none of these dealers had franchises for "heavy-duty" trucks. These dealers are located in Spruce, Hillman and Rogers City, Michigan.

Prior to May, 1967, and for a period of approximately two months, plaintiff Pinkerton negotiated with Alden Peterson, Harold Wahl and James Coey, employees of defendant, concerning the acquisition by plaintiff of an International Harvester truck franchise in the Alpena area. A franchise in Alpena was formerly held by one Everett Smith, but Mr. Smith had terminated his franchise in April of 1967. Plaintiff Pinkerton claims that during these negotiations Peterson, Wahl and Coey assured him that no other heavy-duty truckline franchise would be granted in that area. This claim was disputed by the testimony of Wahl and Peterson. Peterson testified that his statements were not representations of the company but his private opinion, and that he had only stated it was not his personal intention to award another franchise in that area. Wahl testified that he informed Pinkerton that while he did not intend to give a franchise to anyone else, he could not give Pinkerton any assurances or guarantees. Wahl further testified that he informed Pinkerton that the only

assurances or guarantees he could give were those contained in the company's sales and service agreement which Pinkerton would sign and Wahl would approve.

On May 15, 1967, the franchise agreement was signed, and Hi-Way Motor Company became an authorized International Harvester dealer in Alpena. This agreement was supplemented by a series of additional written agreements authorizing the sale of different products and all incorporating the basic contract. As a result, plaintiff company was authorized to sell defendant's complete line of light-duty and heavy-duty trucks, including the aforementioned "Fleetstar A" line.

Clause 32 of the agreement provides as follows:

*"All understandings and agreements between the parties are contained in the agreement,* which supersedes and terminates all previous agreements between the parties pertaining to the sale of the goods covered by this agreement. The rights of either party pertaining to goods sold by the Company to the Dealer under the previous sales and service agreements will be determined by the provisions of this agreement. *There are no oral or collateral agreements or understandings affecting the agreement.* When authorized by the Company's General Office, the Company's District Manager or Assistant District Manager may enter into written agreements with this Dealer, which are not inconsistent with any provision of the agreement, supplementing the agreement, but no representative of the Company, other than one of its corporate officers, is authorized in its behalf to modify, change or waive any of the provisions of the agreement or to change, add to (except by the filling in of blank lines and spaces) or erase any of the printed portion of the form upon which the agreement is prepared." (Emphasis added.)

Plaintiff opened for business in May of 1967, and in December of that same year was granted a

franchise by Oldsmobile and operated both dealerships on the same property. In November of 1968, defendant replaced their district manager and Mr. Wahl, their assistant district manager. In light of these changes, plaintiff again sought assurances concerning the exclusivity of his heavy-duty truck franchise.

In January of 1970, defendant informed Pinkerton through Mr. Peterson that a "Fleetstar A" franchise was to be awarded to a Mr. Thompson, a dealer in Spruce, Michigan. Pinkerton protested this decision, and a series of meetings resulted at which Pinkerton attempted to have defendant reconsider its decision. When Pinkerton did not get the satisfaction he sought, he notified the defendant that he was unilaterally terminating the franchise agreement. The parties have agreed that October 31, 1970, was the date that the agreement was terminated.

Plaintiff then instituted this action claiming fraud and misrepresentation and seeking damages in excess of $423,000. In a pretrial ruling on defendant's motion for partial summary judgment, the trial court limited plaintiff's damages to the elements in a rescission action, due to the fact that plaintiff chose to terminate the agreement. Trial was held in February of 1973, and the court, sitting without a jury, found for the plaintiffs in the amount of $71,211.68, and rendered judgment accordingly on November 30, 1973. Defendant now appeals as of right, and plaintiffs have cross-appealed on the issue of damages.

Although the parties raise several allegations of error on appeal, we find one to be decisional and to mandate a reversal, namely: whether the trial court erred reversibly in finding that the evidence in this case established the elements of a cause of action for fraudulent misrepresentation.

The question in this case is whether or not plaintiff was induced to enter into the franchise agreement by reason of defendant's fraudulent representations. Plaintiff had the burden of proof to establish the essential elements of the cause of action. In *Farida v Zahar,* 50 Mich App 137, 142; 212 NW2d 739 (1973), this Court, quoting from *Papin v Demski,* 17 Mich App 151, 154–155; 169 NW2d 351, 353 (1969) said:

"The general rule is that to constitute actionable fraud it must appear: (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to recovery."

The trial court found that plaintiff had proven actionable misrepresentation by a preponderance of the evidence. We disagree.

In the present case it is clear that even though defendant may have violated its promise not to put another heavy-duty truckline franchise in that area, such violation would not necessarily constitute fraud. In *Boston Piano & Music Co v Pontiac Clothing Co,* 199 Mich 141, 147–148; 165 NW 856 (1917), our Supreme Court said:

"Statements promissory in their character that one will do a particular thing in the future are not misrepresentations, but are contractual in their nature, and do not constitute fraud. *Hubbard v Long,* 105 Mich 442; 63 NW 644 (1895), *Macklem v Fales,* 130 Mich 66; 89

NW 581 (1902). * * * 12 RCL, p 254, lays down the rule in the following language:

" 'Since a fraud must relate to facts then existing or which have previously existed, the general rule is that fraud cannot be predicated upon statements promissory in their nature and relating to future actions, nor upon the mere failure to perform a promise, or an agreement to do something at a future time, or to make good subsequent conditions which have been assured. Nor, it is held, is such nonperformance alone even evidence of fraud. Reasons given for this rule are that a mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character. Moreover, a representation that something will be done in the future, or a promise to do it, from its nature cannot be true or false at the time when it is made. The failure to make it good is merely a breach of contract, which must be enforced by an action on the contract, if at all.' "

See also, *Howard v Reaume,* 310 Mich 119; 16 NW2d 686 (1944), *Broaden v Doncea,* 340 Mich 564; 66 NW2d 216 (1954), and *Kirk v Vaccaro,* 344 Mich 226; 73 NW2d 871 (1955).

A similar doctrine was enunciated by our Supreme Court in *Roy Annett, Inc v Kerezsy,* 336 Mich 169; 57 NW2d 483 (1953). That case dealt with the obtaining of options by a real estate broker and allegations by the optionees that certain false representations were made by the broker in obtaining the options. The Court said, at p 172:

"Those statements, according to the record, made reference to what would happen to the property in the future. It is a generally accepted rule that 'in order that there be actionable fraud, the representation must relate to a matter of fact. Further, it must, ordinarily, relate to a past or existing fact, or an alleged past or existing fact, and not to the future or future events or occurrences'. 37 CJS, p 222.

" '*An actionable representation must relate to past or existing facts and cannot consist of mere broken promises, unfulfilled predictions, or erroneous conjectures as to future events.*' 26 CJ, p 1087, as quoted with approval in *Mieske v Harmony Electric Co,* 278 Mich 61, 66." 270 NW 216 (1936). (Emphasis added.)

The record in the case at bar does not disclose any alleged misstatements of past or present fact. Accepting plaintiff's version of the conversations as true, defendant's representatives spoke only of those things which might happen in the future. By granting the heavy-duty truckline franchise to Mr. Thompson, defendant merely failed to make good subsequent conditions which had been assured. Under, *Boston Piano* and its progeny, this broken promise or unfulfilled prediction did not constitute fraud, nor was it even evidence of fraud. The trial court's finding to the contrary was erroneous. The failure by defendant to make good its guarantee that no other franchises would be granted was merely a breach of contract, which must be enforced by an action on the contract, if at all. *Boston Piano, supra,* at p 126.

Plaintiffs further contend that defendant's alleged promise not to grant another heavy-duty truckline franchise in the Alpena area was made in bad faith, without intention of performance. However, we are of the opinion that there was no evidence presented from which it could reasonably be inferred that such promise was made without intention of performance and as a fraudulent representation. In *Leib v Bostwick,* 256 Mich 277; 239 NW 405 (1931), our Supreme Court stated:

"The fraud claimed by the plaintiff is, that when the defendant made these promises to pay, he did not intend to keep them and concealed his intention from

the vendors. *The defendant denies that he made any such promises, but assuming that he did, there is no evidence they were accompanied by a fraudulent intent. The nonperformance of a promise is not fraud nor is it any evidence of fraud."* (Emphasis added.)

The evidence in the present case brings it within the above rule and mandates a finding that defendant did not act in bad faith.

Plaintiff could have protected his interests and the interests of the company by obtaining a written stipulation or agreement that another heavy-duty truckline franchise would not be granted in the Alpena area. Plaintiff Pinkerton, a trained attorney and experienced businessman, had read the franchise agreement and merger clause and the provision of clause 32 which stated that "there are no oral or collateral agreements or understandings affecting this agreement". The evidence indicates that instead of properly protecting his and the company's interests, plaintiff preferred to rely upon the oral negotiations. Plaintiff's choice to rely on those negotiations rather than to protect his rights by inserting a written provision relating to the exclusivity of his franchise is unfortunate, but under the authorities cited herein, the facts of this case do not establish a cause of action for fraudulent misrepresentation.

We conclude that plaintiffs have failed to establish the alleged fraud on the part of defendant.

The judgment is reversed, without a new trial. Costs to defendant.