JOHNSON v. WOLFE.

1. SPECIFIC PERFORMANCE—LAND CONTRACTS—CONTRACT SIGNED BY AGENT—PERFORMANCE NOT EXCUSED BY FRAUD OF AGENT.

In a suit by the purchaser for the specific performance of a contract for the sale of land to him, where defendants in writing authorized their agent to sell the land and accept a deposit, and, in reliance thereon, plaintiff contracted with the agent to purchase it and paid a deposit of $1,500, the fraudulent conduct of the latter in accounting to defendants for only $50 of the deposit would not excuse them from performing, especially where they ratified the sale in writing, accepted the $50, and, even after discovering the fraud, offered to go through with

On right of either principal to affirmative relief from transaction in which agent acted for both parties, see note in 17 L. R. A. (N. S.) 622.

the deal if the full purchase price was paid according to the terms of their contract with their agent; there being no evidence from which collusion or fraud or unfair dealing on the part of plaintiff could be inferred.

2. SAME—PRINCIPAL AND AGENT—DOUBLE AGENCY.

That defendants' agent had an agency from plaintiff to sell property he owned in another part of the city at the same time he had the agency for the sale of defendants' property, would not create a double agency or raise any inference of double dealing as to either property.

3. SAME—AGENT'S SIGNATURE SUFFICIENT ON SIMPLE CONTRACT.

The objection that the contract of sale to plaintiff was void because signed by the agent in his own name rather than in the name of the principal is without merit, the writing in question being in its nature but a preliminary contractual memorandum in writing in relation to real estate to satisfy the statute of frauds.

Appeal from Wayne; Law (Eugene F.), J., presiding.    Submitted October 27, 1922.    (Docket No. 129.)    Decided June 4, 1923.

Bill by Walter Johnson against Fred Wolfe and another for the specific performance of a land contract. Defendants filed a cross-bill making their agent, J. Ray Honeywell, a party defendant and asking affirmative relief.    From a decree for plaintiff and against cross-defendant Honeywell, defendants appeal.    Affirmed.

*Schmalzriedt, Frye & Granse,* for plaintiff.

*Philip A. McHugh (John R. Rood,* of counsel), for defendants.

STEERE, J.    Plaintiff filed this bill to enforce specific performance of a claimed contract for sale to him by defendants of a certain piece of real estate known as 68-70-74-76 Montcalm street, west, in the city of Detroit upon which were four frame houses. At the time the alleged contract was signed by de-

fendants they did not know plaintiff, the business being transacted with or through a real estate agent named Honeywell.

The documentary evidence of the transaction is as follows:

"EXHIBIT A.
"Detroit, Mich., Oct. 16, 1919.

"To J. RAY HONEYWELL: For and in consideration of one dollar ($1.00), the receipt of which is acknowledged, I hereby appoint you as exclusive agent to make sale of the real property herein described as 68-70-74-76 Montcalm street (four houses), Detroit, Mich., for the price of $50,000.00 upon the following terms: $15,000.00 in 3 mos., bal. on contract $500.00 mo., including int.   Give possession in 60 days cash $................ secured by mortgage thereon for ...........years at 6 per cent., and you are hereby authorized to accept a deposit to be applied on the purchase price, and to execute a binding contract for sale on my behalf.

"In case the above described property is sold or disposed of within the time specified I agree to make the purchaser a good   *   *   *   contract to the same and to furnish a complete abstract of title, if required; and it is further agreed that you shall have and may retain from the proceeds arising from such sale 3 per cent. commission on the above price; and all per cent. of all of the consideration for which said property is sold over and above price above specified, and in case said property is sold within said time either through me or any other person, then in that case I promise to pay you 3 per cent. on the whole amount for which said property may be sold.

"This contract to continue until October 31, 1919, and thereafter until terminated by my giving unto you as agent 30 days' notice in writing.

(Signed) "FRED WOLFE,
(Signed) "FLORENCE F. WOLFE.

"Witness: .......................,
......................."

"EXHIBIT B.
10-17-1919.

"Received of Walter Johnson fifteen hundred dollars

as first payment on property situated at numbers 68-70-74-76 Montcalm St. west, city of Detroit, Michigan, $13,500 payable as soon as abstract is brought to date showing merchantable title in the name of Fred Wolfe and Florence Wolfe, his wife, and certified to by Walter Johnson, attorney; $1,000 per month for five months and $500 per month for balance until $50,000 has been paid in full, monthly payments include interest at 6%.

(Signed) "J. RAY HONEYWELL."

"EXHIBIT C.

"Detroit, Mich., October 17, 1919.

"Received of J. R. Honeywell fifty dollars as first payment on property located at 68-70-74-76 Montcalm St., Detroit, Mich. balance of $13,450 to be paid as soon as abstract is brought down to date and approved by purchaser's attorney, then $1,000 per month including interest until $48,500.00, the purchase price, has been paid in full. I retain the right of living in the house 60 days from date herein stated.

(Signed) "FRED WOLFE,<br>(Signed) "FLORENCE F. WOLFE."

Defendants are husband and wife and were then residing in one of the houses. They were acquainted with Honeywell, had told him the price they asked for the property and testified that at the time of this transaction they "thought he was an honest man" and had confidence in him. Exhibit A was in duplicate and when executed one copy was taken by Honeywell and the other left with them. Honeywell then went to plaintiff fortified with his copy and called his attention to it, having previously talked with him about buying the property, and following some negotiations plaintiff accepted the contract as proposed, gave Honeywell his check for $1,500 as a cash deposit on the purchase price and received from him Exhibit B. Honeywell then told defendants he had sold the property for them, but did not correctly inform them of the amount of cash deposit plaintiff made with him. He, however, only paid them $50, stating he

would get the balance in a few days and obtained from them Exhibit C. On cashing plaintiff's check, he retained all the balance of the $1,500. After some delay and controversy with him in regard to it in which he used their failure to furnish him with proper abstract as an excuse, they lost confidence in him and refused to have anything more to do with the deal.

Defendants filed an answer and cross-bill, in which Honeywell was made a party defendant to the cross-bill. In it they first say: "They admit the signing of said instrument 'Exhibit A,' but deny that there was 'a valuable consideration' and deny each and every other allegation contained in said second paragraph," with further denials and lengthy allegations in avoidance of succeeding paragraphs. In substance, the defenses pleaded are that Honeywell obtained their signatures to the papers they signed by misrepresentation and fraud; that Exhibit A conferred no authority on him to bind them by contract to sell their property, as he induced them to sign by representing it was only an agreement to pay a commission and subsequent to their signing he added to and changed it by filling out blanks in the printed form used, and that plaintiff himself acted in collusion with Honeywell in fraudulently securing the instrument with their signatures; dismissal of plaintiff's bill is asked and, as affirmative relief under their cross-bill, a decree is asked against cross-defendants for damages occasioned by their fraudulent conduct in clouding defendants' title to the property and tying it up by injunction, concluding with a general prayer for relief.

The trial court found Honeywell's conduct in his relations with defendants "was not that of an ideal agent" and they had reason to be dissatisfied with him, but found that Exhibit A as offered in court was in the "same condition, so far as the printed and

written language contained in it is concerned, as when signed by defendants;" that by it they authorized him to make a binding contract as their agent for the sale of this real estate and accept a deposit to apply on the purchase price; that when informed by him such sale had been made they apparently were at first satisfied with it, ratified it in writing and began negotiations for a new home, but because of the conduct of their own agent, Honeywell, they subsequently became dissatisfied and finally repudiated the contract; that plaintiff was able and willing to carry out its terms and as to him "there is no direct evidence that he acted fraudulently or unfairly towards defendants, nor is there any indirect or collateral evidence from which such fraud or unfair dealing can be legitimately inferred."

Specific performance was decreed in favor of plaintiff as prayed for, but against cross-defendant Honeywell the court adjudged and decreed that he within ten days pay defendants the $1,450 deposit money he had retained with interest from October 23, 1919, but without prejudice to any right of action he might have against them for a commission under the terms of Exhibit A.

It is undisputed that this business was transacted through Honeywell whom defendants admit they authorized in writing to act as their agent in selling this property for $50,000 on an agreed commission of 3% of the purchase price. They neither met or knew Johnson until after they signed Exhibit C. Johnson owned property on Hamilton boulevard which he desired to sell and had, at Honeywell's solicitation, listed it with him as a real estate broker to sell on commission, giving him authority to act as his agent in that particular. Out of their relations in that connection a claim of collusion and double agency fraudulently concealed from defendants is made, which their

counsel urge rendered void or voidable any contract
Honeywell as their agent might make with Johnson
for sale to him of their property. Johnson certainly
made no fraudulent representations to defendants.
That Honeywell had an agency from Johnson to sell
property he owned in another part of the city and also
an agency to sell defendants' property could not in
itself create a double agency as to it or raise any in-
ference of double dealing as to either property.
There is no proof, and both positively deny, that John-
son was paid or agreed to pay Honeywell for any
services in connection with his purchase of this
property. Johnson testified that Honeywell failed to
find a purchaser for his own property on Hamilton
boulevard, and, having sold it himself, he canceled
Honeywell's agency before buying defendants' prop-
erty. Being then in a position financially to buy their
property, he dealt for it with Honeywell as their agent
after the latter had produced written evidence of his
authority to act as such. In reliance on it he con-
tracted to buy the property at the price they con-
cededly asked and paid to Honeywell a deposit on the
purchase price, and had no knowledge that Honey-
well had failed to properly account to defendants for
the deposit until he later called upon them to see about
the abstracts which they were to furnish him. He
was not responsible for their agent's delinquency in
dealing with them.

"A third person, however, who deals with an agent,
is not liable to the principal for a fraud perpetrated by
the agent upon his principal in that transaction unless
such third person was a party to the fraud." Mechem
on Agency (1st Ed.), § 796.

Plaintiff's claimed contract for which he asks
specific performance is based on the three exhibits
A, B and C considered together. Defendants' effort
to avoid the effect of the written evidence of agency

which they signed, based on a claim of false representation and fraudulent alteration by Honeywell, is weakened by evidence beyond his positive denial. Their own testimony shows that they had more than once told him the price they asked for the property, refused to name a lower figure, authorized him to act as their agent to sell it at that price for an agreed commission of 3%, and that they talked the terms of deferred payments, etc., over with him before signing those papers in their own home. They could read and write, were persons of mature years and business experience. They had run a dance hall with others 9 years and after buying the place ran it for two years; had been in the grocery business; and had bought and sold real estate. Mrs. Wolfe testified that she had helped her husband manage their business and in so doing acquired some business experience. Of her real estate experience she incidentally said in commenting on Honeywell's conduct, "I have dealt with real estate people, bought and sold, and I never had any person like that." Their principal protest against the accuracy of Exhibit A appears to be that the earnest deposit on the purchase price was to be $2,000, and the principal reason for their refusing to go on with the deal was failure of Honeywell to produce that amount as they claimed he promised to do. Even after they learned that Honeywell had received a deposit of $1,500 instead of but $50, Mrs. Wolfe said:

"At that time I was willing to go through with the deal on a basis of $50,000 if the $2,000 had been deposited, and the rest of the contract lived up to. * * * I don't want to go through with the deal because Mr. Johnson brought me—because Mr. Honeywell disappointed me in the $2,000."

Exhibit A authorized Honeywell to "accept a deposit on the purchase price" without stating any

amount. He accepted as such from Johnson 10 per cent. of the $15,000, which under the terms of that exhibit was to be paid within three months, and provided in the receipt he gave for it that the balance, $13,500, should be paid as soon as an abstract brought down to date was furnished the purchaser showing defendants had a merchantable title to the property. This they ratified by Exhibit B which they admittedly read and signed. Mrs. Wolfe testified that at the time they signed it she had it in her hands and looked it over, and her husband read it aloud. As a step in compliance with its provisions she, on October 22, 1919, took their abstracts of title to the abstract office and left them there, listed in her own name, and said of the transaction: "The balance of the down payment was to be paid as soon as the abstracts were brought down to date and approved by the purchaser's attorney." Up to that time the principals in this transaction had not met, but four days later, on October 26th, Johnson called at defendants' home, introduced himself as the man who had purchased their property and inquired if the abstracts were ready. In the interview which followed they first learned Johnson had deposited $1,500 on the purchase price, and Johnson first learned that Honeywell had absorbed all but $50 of it. The details of what followed are immaterial. The only subject upon which they were in accord appears to have been Honeywell's turpitude. Johnson denied responsibility for or previous knowledge of any fraud perpetrated upon them by their agent, with whom he insisted he had dealt as such relying on the written authority they had given him and insisted on their performing the contract, which they refused to do, reiterating as reasons the fraudulent conduct of Honeywell.

It is further urged against the validity of this contract that Exhibit B was made in the execution of

a power, not in the name of the principal but only by the agent in his own name. The authorities cited to support that contention apply to instruments under seal, conveyances, transactions where charter powers are involved, etc., and not to simple contracts. This contract was in its nature but a preliminary, contractual memorandum in writing in relation to real estate to satisfy our statute of frauds.

In *City of Detroit* v. *Jackson,* 1 Doug. 106, the rule as to simple contracts in this jurisdiction is first stated as follows:

"Where, however, the instrument is not under seal, a different rule prevails. In such cases, it is enough if the contract is made in the name of the principal, and as his contract, through the agent, and the signature of the agent is made to the instrument purporting to charge his principal."

That rule is also reiterated in *Keidan* v. *Winegar,* 95 Mich. 430 (20 L. R. A. 705), with citation of authorities.

Of simple contracts it is said in 1 Mechem on Agency (2d Ed), § 1165:

"The strict rules of the common law which govern the execution of solemn instruments under seal, do not apply here; neither is there the same necessity that they tell their own story in the same direct and positive manner that has been seen to be required of negotiable paper."

*Vide,* also, §§ 1166, 1180.

We find no occasion to disturb the conclusions reached by the trial court. The decree will stand affirmed, with costs in favor of plaintiff against defendants on his bill of complaint, and in their favor against Honeywell on their cross-bill.

WIEST, C. J., and FELLOWS, MCDONALD, BIRD, and SHARPE, JJ., concurred. CLARK and MOORE, JJ., did not sit.