### BROADEN v. DONCEA.

1. Appeal and Error—Chancery Cases—Finding of Fact—Credibility of Witnesses.
    A trial court's finding of fact in a chancery case, which rests quite largely on the credibility of the witnesses, is not disturbed on appeal, since the trial judge was obviously in a better position than the Supreme Court to determine the weight to be given to the testimony of each witness.

2. Reformation of Instruments—Land Contracts—Evidence.
    Testimony actually offered in suit to reform a land contract, even when considered with the absence of one of the defendants, held, insufficient to establish plaintiffs' right to relief sought, especially where it is not claimed the absent defendant was in hiding or that it would not have been possible to serve a subpoena on him and record does not indicate he had taken an active part in the dealings relative to the contract.

3. Vendor and Purchaser—Duress—Evidence.
    The fact that plaintiff vendees, who were occupying premises which were the subject of a land contract at the time of its

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error §§ 815, 895, 912.
[2] 45 Am Jur, Reformation of Instruments § 116.
[3] 55 Am Jur, Vendor and Purchaser § 46.
[4] 45 Am Jur, Reformation of Instruments §§ 58, 59.
[5, 8] 23 Am Jur, Fraud and Deceit §§ 38–40.
[6] 24 Am Jur, Fraud and Deceit § 244.
[7] 24 Am Jur, Fraud and Deceit §§ 255, 278.
[9] 14 Am Jur, Costs § 92.

execution, were told they must accept the contract proffered them is not sufficient to indicate duress on part of vendors who had previously sold the premises to party from whom the plaintiffs had rented for a time but who had forfeited his contract some 2 years before execution of contract to plaintiffs who now claim credit for payments made on the earlier contract.

4. REFORMATION OF INSTRUMENTS—LAND CONTRACT—PROMISES.

Land contract will not be revised because of promises alleged to have been made by defendant vendors to allow certain credits thereon, where it is neither alleged nor proved that the contract was signed by plaintiffs in reliance on such promises or that if defendants did make them they did so intending at the time to refuse to carry them out.

5. FRAUD—PROMISES.

A reference to a promise as a misrepresentation does not make it so, as a mere promise to do something in the future may not be regarded as a misrepresentation of a material existing fact even though such promise is not kept.

6. REFORMATION OF INSTRUMENTS—FRAUD—PLEADING—PROMISES.

A party claiming reformation of a contract on the ground of fraud must set forth in what the fraud consisted and the mere allegation of a promise which was not kept is insufficient.

7. FRAUD—EVIDENCE.

Fraud, when properly alleged, must be shown by clear and satisfactory proof.

8. SAME—PROMISES.

Statements, promissory in their character, that one will do a particular thing in the future are not misrepresentations, but are contractual in their nature, and do not constitute fraud.

9. COSTS—BRIEFS.

No costs are allowed appellees upon affirmance of a decree, where no brief has been filed on their behalf.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted June 10, 1954. (Docket No. 37, Calendar No. 45,873.) Decided October 4, 1954.

Bill by Horace Broaden and Mattie Lee Broaden against Nick Doncea and Elizabeth Doncea to revise land contract to give credit for payments made under

alleged oral agreement. Bill dismissed. Plaintiffs appeal. Affirmed.

*Charfoos, Gussin, Weinstein & Kroll (William J. Weinstein,* of counsel), for plaintiffs.

Carr, J. This is a suit in equity to enjoin the forfeiture, or foreclosure, of a certain land contract, and for the revision of said contract in accordance with an alleged oral agreement. The property in question is referred to as 12922 Greeley street, Detroit. Defendants acquired ownership thereof prior to the 29th of October, 1943, on which date they entered into an executory land contract for its sale to Kate Long for a total consideration of $4,800. The proofs disclose that Mrs. Long was not the real party in interest, that her son Rufus Long intended to make the payments as they fell due, and that he actually made the down payment in the sum of $800. Of this amount $300 was borrowed by Rufus Long from plaintiff Mattie Lee Broaden (then Mattie Lee Erwin). Neither of the Longs occupied the property but Mrs. Erwin did so under an arrangement to pay rent to Rufus Long.

The payments were not made on the land contract as required, and in the spring of 1945 defendants took steps to forfeit the vendee's interest. The circuit court commissioner before whom the matter was heard determined the issue in their favor and entered an order on the 3d of May, 1945, finding the vendee in default in the sum of $531.06. It does not appear that either of the Longs took any further interest in the matter.

It is the claim of the plaintiffs that negotiations were entered into between Mrs. Broaden and defendant Mrs. Doncea for the purchase of the property by the former. The testimony relating to this phase of the case is conflicting and indefinite. It is the

claim of the plaintiffs, in substance, that it was understood and agreed by the parties that if the amount of the default under the Long contract was paid up in full plaintiffs might proceed under the terms of that instrument, or under a new contract for the purchase of the property on the basis of a total consideration of $4,800 with credit given for all payments made in accordance with the contract executed by defendants to Kate Long. The defendant Mrs. Doncea denied any such arrangement and claimed that the understanding was that if plaintiffs should, within the 90-day period following the termination of the circuit court proceeding, above referred to, make up the full amount of the default as fixed by the circuit court commissioner, together with the costs of the litigation, they would be given credit accordingly on the purchase price of the property. On behalf of defendants it was further claimed that such arrangement was not carried out. Plaintiffs continued to occupy the property and made payments to defendants from time to time for which receipts were given, the majority of said receipts referring to each such payment as rent.

On the 15th of October, 1947, an executory land contract was prepared and executed by the parties, providing for the sale of the property to plaintiffs by defendants for the total sum of $4,600 with a $200 down payment. Shortly prior to such execution plaintiffs made certain payments to defendants, the parties being in disagreement as to the reason therefor. On behalf of defendants it is claimed that the property had increased in value, and that said payments were by way of inducement to the making of the contract of October 15, 1947, on the terms therein set forth. It is the position of the plaintiffs that such payments were required in order to satisfy the provisions of the Long contract, which was, as above noted, forfeited over 2 years previously.

Plaintiffs alleged in their bill of complaint that they signed the land contract when proffered to them because of statements made by defendants to the effect that if they did not do so they would be put out of possession of the property. The testimony of each of the plaintiffs on the trial of the case supports this averment, justifying the inference that the reason why the new contract was executed by plaintiffs was to permit them to remain in their home and acquire ownership. The plaintiffs also claimed that they objected to the contract because it did not give them credit for prior payments allegedly made pursuant to the Long contract, and that they were promised by Mrs. Doncea that a check would be made with reference to said payments and proper credit given therefor. On behalf of defendants the making of any such promises was denied. No written memorandum of the agreement now claimed by plaintiffs was prepared.

After the execution of the October, 1947, contract plaintiffs remained in the property thereunder and made payments from time to time until January, 1950. They insist that they continually brought up the matter of the allowance of the credits claimed by them, but without results. In January, 1950, at the time of making a payment in the sum of $200 under their contract, they claim that they informed defendants that they would not pay any more money until the controversy that they asserted was settled. Forfeiture or foreclosure proceedings being threatened by defendants, plaintiffs filed the instant suit asking for an injunction against any such forfeiture or foreclosure and asking also that the contract of October 15, 1947, be revised "to include all payments made since the date that your plaintiff, Mattie Lee Broaden took over and assumed the land contract of one Rufus Long."

After listening to the testimony of the witnesses the trial judge came to the conclusion that plaintiffs had not established their right to the relief sought with the requisite degree of certainty and entered a decree dismissing the bill of complaint. Plaintiffs have appealed, claiming that such finding is not in accordance with the weight of the proofs. The determination of the actual facts involved rests quite largely on the credibility of the witnesses. Having observed them on the stand, the trial judge was obviously in a better position than is this Court to determine the weight to be given to the testimony of each witness.

It appears that defendant Nick Doncea was not sworn as a witness and apparently was not in court, although plaintiffs' counsel indicated that he wished to call him for cross-examination. No claim is made that defendant Doncea was in hiding, or that it would not have been possible to procure his attendance by serving a subpoena on him. On behalf of plaintiffs, however, it is urged that because he was not present in court and did not offer himself as a witness it must be inferred that his testimony, had he given it, would have been favorable to them. The trial judge obviously concluded that any inference that might be permissible because of the absence of Mr. Doncea was insufficient, considered with the testimony actually offered in the case, to entitle plaintiffs to a revision of the contract. It may be noted in this connection that the record does not indicate that Mr. Doncea had taken an active part in the dealings between the parties.

It seems to be the theory of the plaintiffs that Mrs. Broaden succeeded to the vendee's rights under the Long contract. The bill of complaint refers to her taking over said contract and making payments thereon. However, the bill further alleges that the original and a copy of said land contract were in

the possession of the defendants, and following the institution of the suit a demand was made on the attorney for defendants to produce the Long contract and the assignment thereof to the plaintiffs. The contract was in fact produced in court on the trial and was introduced as an exhibit. There was no assignment attached to it, or established by the testimony. Mrs. Broaden testified on the trial that Mrs. Long had turned the contract over to her. Later she stated that Rufus Long had delivered the papers. She did not, however, indicate that any assignment had been made, and Rufus Long, who was called as a witness in the case, testified in effect that he retained the vendee's copy of the contract but was unable to produce it because it had been mislaid.

It is possible that the confusion in the testimony arises from the fact that on some occasions while the Long contract was still in effect Mrs. Broaden took it, and the monthly payment due, to Mrs. Doncea. Apparently the contract was returned to the vendee following each such occurrence. The record does not justify the inference that the Long contract was at any time delivered to either of the plaintiffs for the purpose of attempting to vest in them, or either of them, an interest in the property. It is significant in this respect that Mrs. Broaden stated in her testimony that in the spring of 1945 she had asked Mrs. Doncea for a copy of the contract and was told that receipts would be given for any payments made and that she did not need anything in addition thereto.

The practical situation presented is that plaintiffs are asking the Court to revise a contract into which they entered with full knowledge of its provisions. The fact that they were told that if they wished to acquire any interest in the property they must accept the contract proffered to them, if such was the fact, is not sufficient to indicate duress. No claim

is made either in the bill of complaint or in the proofs that they signed the contract that they now seek to have revised in reliance on promises by defendants that credits would be given in the future after a check had been made. Neither is there any claim that if defendants made such promises they did so intending at the time to refuse to carry them out. Referring to such promises as misrepresentations does not make them so. A mere promise to do something in the future may not be regarded as a misrepresentation of a material existing fact even though such promise is not kept.

In seeking relief on the theory of fraud it was incumbent on plaintiffs to set forth in what the fraud consisted, and the mere allegation as to the making of a promise which was not kept was insufficient. Likewise, fraud, when properly alleged, must be shown by clear and satisfactory proof. In *Boston Piano & Music Co.* v. *Pontiac Clothing Co.*, 199 Mich 141, 147, the Court called attention to the fact that there was no claim that certain promises alleged to have been made were actually made in bad faith with no intent to perform them and as part of a scheme to defraud. Further commenting, it was said:

"Statements promissory in their character that one will do a particular thing in the future are not misrepresentations, but are contractual in their nature, and do not constitute fraud."

The Court further quoted with approval from 12 RCL, p 254, Fraud and Deceit, § 21, as follows:

" 'Since a fraud must relate to facts then existing or which have previously existed, the general rule is that fraud cannot be predicated upon statements promissory in their nature and relating to future actions, nor upon the mere failure to perform a promise, or an agreement to do something at a future time,

or to make good subsequent conditions which have been assured. Nor, it is held, is such nonperformance alone even evidence of fraud. Reasons given for this rule are that a mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character. Moreover, a representation that something will be done in the future, or a promise to do it, from its nature cannot be true or false at the time when it is made. The failure to make it good is merely a breach of contract, which must be enforced by an action on the contract, if at all.' "

See, also, *Howard* v. *Reaume,* 310 Mich 119.

We are in accord with the finding of the trial judge that under the record in the case plaintiffs are not entitled to the relief sought by them. The decree is affirmed. No brief having been filed on behalf of appellees, costs are not allowed.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.