In the Matter of Josephine ROBERTS, Bankrupt.

In the Matter of Clarence Edgar ROBERTS, Bankrupt.

Nos. 20481, 20482.

United States District Court
W. D. Michigan, S. D.

Dec. 11, 1963.

Foster, Campbell, Lindemer & McGurrin and Richard B. Foster, Jr., Lansing, Mich., for petitioner.

Murray Benn DeGroot and Donald L. Ghareeb, Grand Rapids, Mich., for respondents.

STARR, Senior District Judge.

The American Bank and Trust Company of Lansing, Michigan, filed petition for review of an order of the referee in bankruptcy entered December 19, 1962, ordering the bank to turn over to the trustee of the bankrupts' estates the sum of $5,000 it had received from the sale of certain laundry equipment.

Clarence Edgar Roberts and his wife, Josephine Roberts, on their separate petitions were adjudged bankrupts December 18, 1961, and Wadsworth Bissell was appointed and qualified as trustee of the estate of each bankrupt. For sake of brevity Clarence Edgar Roberts will hereinafter be referred to as Roberts. On February 23, 1962, the trustee filed petition for an order directing the bank to show cause why two conditional sales contracts dated October 10, and 12, 1960, executed by bankrupt Roberts and his

1

wife to Walt Neal, Inc., and assigned to the bank, should not be held invalid as against the trustee on the ground that the contracts were in the nature of chattel mortgages but did not contain good-faith affidavits as required by Comp.Laws Mich.1948, § 566.140. In pursuance of the trustee's petition the referee in bankruptcy entered an order directing Walt Neal, Inc., and the bank to show cause why the two conditional sales contracts should not be held invalid as against the trustee. On March 12, 1962, the bank filed answer to the order to show cause, alleging that the conditional sales contracts were valid and that the bank as holder of the contracts was entitled to immediate possession of the goods and chattels covered by the contracts. However, on April 26th the bank filed an amended answer to the order to show cause, in which it stated that it elected to rescind the transactions in which the conditional sales contracts had been given, on the ground that the money and property received by the bankrupts through the transactions were procured through their fraud and that the bank was entitled to the money and property covered by the contracts.

On June 27, 1962, the trustee in bankruptcy and the bank entered into a stipulation, which provided that the property and laundry equipment described in the conditional sales contracts of October 10, and 12, 1960, be sold by the bank and that the money realized from the sale should be held by the bank pending a final court decision as to the ownership thereof.

On September 26, 1962, the bank filed a motion alleging that the money and property obtained by the bankrupts through the conditional sales contracts of October 10, and 12, 1960, and a subsequent conditional sales contract dated April 17, 1961, were obtained from the bank by fraud and that because of such fraud no title to the money or property ever passed to the bankrupts. In its motion the bank asked that the referee in bankruptcy decree that a constructive trust existed for the benefit of the bank, covering all such money or property in whatever form it might be, and that the referee decree that the trustee in bankruptcy had no interest in such money or property. In its motion the bank stated that pursuant to the stipulation with the trustee the laundry equipment described in the conditional sales contracts had been sold by the bank for $5,000.

A hearing was had on the order to show cause and the bank's answers and motion, and testimony was taken. On December 19, 1962, the referee filed findings of fact and conclusions of law determining that the bankrupts had not participated in any fraud upon the bank and that the bank was not entitled to a constructive trust for its benefit as to the money derived from the sale of the property and laundry equipment. The referee accordingly entered an order directing the bank to turn over to the trustee of the bankrupts' estates the sum of $5,000 it had received from the sale of the property and laundry equipment. The referee further held that the bank could file its unsecured claim against the bankrupts' estates.

To determine the questions presented by the bank's petition for review of the referee's order, it is necessary to set forth in some detail the factual situation out of which this litigation arose. The American Bank and Trust Company is engaged in the general banking business in the city of Lansing, Ingham county, Michigan. Bankrupts Roberts and his wife resided in Ionia county, Michigan, and prior to September, 1960, Roberts conducted the Wolverine water treating company in the city of Battle Creek in Calhoun county. Over a period of several years Roberts had borrowed money from the bank, and in the course of these transactions he became well acquainted with Richard Heinritz, who was assistant cashier of the bank. In the early fall of 1960 Roberts talked with Heinritz regarding his obtaining a loan from the bank to enable him to purchase certain equipment to start a laundry in Battle Creek. Heinritz informed Roberts that the collateral security he offered

for the loan was not good enough and that he would have to have a cosigner to guarantee the loan. Heinritz told Roberts that he could obtain such a cosigner for him but that Roberts would have to pay an additional 2 per cent interest for this service. Heinritz explained that Walt Neal would be the cosigner and that the total interest charge would be 7 per cent, of which 5 per cent would go to the bank and 2 per cent to Walt Neal for cosigning as an endorser and guaranteeing the loan. Heinritz told Roberts that he was to get $150 from Walt Neal for his services in working out the transaction with Neal. Roberts testified regarding his arrangements with Heinritz as follows:

"Q. Mr. Roberts, how much did Richard Heinritz tell you he was being paid for making this loan?

"A. $150.

"Q. He told you he was being paid $150 for making this loan to you, is that correct?

"A. Yes.

"Q. Do you recall the circumstances under which he revealed this information to you?

"A. Yes, because Walt Neal was a cosigner and that was the understanding Walt Neal would be my cosigner and guarantee the loan. Any time Dick (Heinritz) could get a loan where Walt Neal could get an extra 2 per cent in addition he got a fee out of it also from Walt, not from the bank. This is what was told to me.

"Q. Is it your understanding that the total amount of your contract was increased by what Mr. Heinritz was to receive?

"A. I was to pay 7 per cent interest instead of 5 and 2 per cent was to go to Walt Neal as a guarantee of my loan."

Some of the negotiations and business dealings between Roberts and Heinritz as an officer of the bank took place at the bank, some in Heinritz' home, and some took place after banking hours in restaurants in Lansing with bars attached. However, as determined by the referee, the restaurants mentioned were reputable eating places frequented by business and professional men and were located near the bank. There is no claim or showing that Heinritz or Roberts did any drinking in the restaurants or attached bars, or that liquor in any way affected the transactions between the parties.

Heinritz presented Roberts with two blank forms entitled "conditional sales contract," and Roberts and his wife signed these forms in blank. These two forms were apparently later filled out by Heinritz, one being dated October 10, and the other October 12, 1960, and purported to cover a list of laundry equipment which Walt Neal, Inc., as dealer was selling to Roberts and his wife. Each contract provided for the payment of $11,009.92 to Walt Neal, Inc., in monthly instalments. These contracts were accepted by Walt Neal, Inc., as dealer by Calvin P. West, Jr., an officer of the company, and were assigned by Walt Neal, Inc., to the bank. The form of promissory note signed by Roberts and his wife attached to each contract provided for payment to Walt Neal, Inc., of the sum of $11,009.92 in monthly instalments at the bank.

After these two conditional sales contracts had been filled out and completed, Heinritz delivered to Roberts one check of the American Bank and Trust Company dated October 6, 1960, payable to C. E. Roberts and Cleaners Sales Company in the amount of $8,500, and another check dated October 8, 1960, payable to C. E. Roberts and Cleaners Sales Company also in the amount of $8,500. These checks were signed by Heinritz as an officer of the bank, and the first check was marked "part payment—commercial laundry equipment," and the second check was marked "payment in full—merchandise outlined in letter (from Cleaners Sales Company) dated October 6, 1960, to American Bank & Trust Co." At about that same time Heinritz also gave Roberts a check of the bank dated October 8, 1960, in the amount of $1,376.24

**4**

and instructed Roberts to cash this check and give the money back to him. Roberts testified that this check was the amount he was to pay to have Walt Neal cosign the notes and guarantee the loans. Roberts testified regarding this check as follows:

"Q. Mr. Roberts, will you please tell the court what that check is, your understanding of what that check is?

"A. This is a check in my name.

"Q. * * * The check in the date October 8, 1960, for $1,376.-24, will you please tell me what that check is?

"A. This check was given to me previous to the $8,500. I· was to take it to the drive-in bank of S. Washington avenue (branch of American Bank and Trust Company), cash the check, bring the money back to Dick Heinritz, and *this is the amount I was to pay to have Walt Neal cosign.* * * *

"Q. You stated that Richard Heinritz gave it to you and you cashed it at the St. Joe street branch of American Bank and Trust?

"A. Yes.

"Q. And brought the proceeds back to Richard Heinritz?

"A. Yes. * * *

"Q. * * * How much did Richard Heinritz tell you he was being paid for making this loan?

"A. $150."

It appears that Roberts continued the laundry business in Battle Creek and that in April, 1961, he went to Heinritz' home and talked with him regarding consolidating all of his loans at the bank, including the loans on the laundry equipment and furniture and a Thunderbird automobile. In April, 1961, Roberts and his wife signed another conditional sales contract in blank, and this was apparently later filled out by Heinritz and dated April 17, 1961. This contract also purported to be a sale by Walt Neal, Inc., as dealer to Roberts and his wife of various unnamed articles and a Thunderbird automobile, which were described in the contract as follows:

| "Model No. | Serial No. | Description of Article | |
|---|---|---|---|
| | | (See Listing Attached on reverse side—Items too numerous to list separately here) | $23,924.71—Three con- 5,981.18 tracts $29,905.89 |
| 1959 | H94H 133619 | Ford—Thunderbird 2 Dr. H. T. | |
| (Further secured by 2nd real estate mortgage to Walt Neal Inc.)" | | | |

The list referred to in the contract was not attached to the contract, and there is no showing as to what the numerous items consisted of. This contract was accepted in writing by Walt Neal, Inc., as dealer and was assigned by Walt Neal, Inc., as dealer to the bank. The contract and the attached promissory note signed by Roberts and his wife provided for the payment of $29,905.89 to Walt Neal, Inc., in monthly instalments.

It appears that a bank check dated April 1, 1961, signed by Heinritz as an officer of the bank for $2,174.97, and payable to Roberts, was delivered to him, and at Heinritz' instruction Roberts cashed this check and delivered the proceeds to Heinritz. Roberts testified regarding this check of April 1, 1961, as follows:

"Q. This is a check dated April 1st purported to be signed [endorsed] by C. E. Roberts in the

amount of $2,174.97. Would you tell the court what the check was for?

"A. The check was for the same thing as the check for $1,300.

"Q. What was that?

"A. The 2 per cent additional I had to pay to realize the loan.

"Q. You were paying this amount in order to procure an endorser, is that correct?

"A. Yes, it was cashed in the same place and delivered back to Mr. Heinritz again. * * *

"Q. * * * And it is this check you received in connection with the April 17, 1961, contract, is that correct, this check for $2,174.97?

"A. Yes. * * *

"Q. Mr. Roberts, did Richard Heinritz tell you he was going to be well paid for making this loan. I'm now referring to the one that took place on April 17, 1961?

"A. No, the words were he would make a little more money on them. I don't know as he said he was well paid at all.

"Q. Did he say who was paying him?

"A. Yes, I think he did, he told me Walt Neal was paying him.

"Q. For making this specific loan?

"A. For making this loan, because he was making 2 per cent interest, yes.

"Q. Mr. Roberts, are you acquainted with Mr. Walt Neal?

"A. I never met the man in my life."

From the testimony it clearly appears that Roberts did all of his banking with the American Bank and Trust Company and that the loans he made prior to 1960, and the loans he made in October, 1960, and the consolidation of all his loans from the bank in 1961 were all negotiated through Heinritz as assistant cashier of the bank. Roberts testified: "I trusted my banker. He had always been my banker." It is clear from the testimony that Roberts and his wife signed the two conditional sales contracts in October, 1960, *in blank*, and the conditional sales contract in 1961 *in blank*, and that they relied entirely on Heinritz as an officer of the bank to fill out the contracts and work out the loan transactions with the bank and with Walt Neal, Inc. In his testimony Walter Neal admitted that neither he nor Walt Neal, Inc., ever owned the laundry equipment Roberts was purchasing. However, Neal testified that he permitted Heinritz as cashier of the bank to negotiate the Roberts loans and other loan transactions through Walt Neal, Inc., in order to get 1 per cent of the amount of the loans, which 1 per cent was to be deposited in the Walt Neal, Inc., reserve account at the bank. It is significant that the bank did not call Heinritz as a witness at the hearing before the referee.

The question as to whether there was collusion between Heinritz as the bank's agent and the officers of Walt Neal, Inc., to defraud the bank does not require consideration or determination in this case. The bank bases its claim to a constructive trust for its benefit as to the $5,000 received from the sale of the laundry equipment on the alleged ground that the bankrupts obtained the loans from the bank by fraud and that by reason of their fraud no title to the money or property passed to them. Heinritz was the bank's agent, and in Margolis v. Benton, 343 Mich. 34, 38, 39, 72 N.W.2d 213, 215 the court said:

"This Court on many occasions has stated that one seeking relief in chancery court on the ground of fraud must establish it by clear and convincing proof. Zimmerman v. Feldman, 217 Mich. 390, 186 N.W. 495; Gardner v. Gardner, 311 Mich. 615, 19 N.W.2d 118; Grimshaw v. Aske, 332 Mich. 146, 50 N.W.2d 866; Broaden v. Doncea, 340 Mich. 564, 66 N.W.2d 216. * * *

" ' "A third person, however, who deals with an agent, is not liable to the principal for a fraud perpetrated

by the agent upon his principal in that transaction *unless such third person was a party to the fraud.'* Mechem on Agency (1st ed.), § 796.' Johnson v. Wolfe, 223 Mich. 10, 16, 193 N.W. 892."

■ The law is well established in *Michigan that fraud will not be presumed* but must be affirmatively established by clear and convincing evidence. In Broaden v. Doncea, 340 Mich. 564, 571, 66 N.W. 2d 216, 220 the court said: "[F]raud, when properly alleged, must be shown by clear and satisfactory proof." In Gardner v. Gardner, 311 Mich. 615, 623, 19 N.W.2d 118, 121 the court said: "It is elementary that one who bases his claim for relief upon the ground of fraud must establish the fraud by evidence which is convincing. Zimmerman v. Feldman, supra (217 Mich. 390, 186 N.W. 495)." See also Grimshaw v. Aske, 332 Mich. 146, 157, 50 N.W.2d 866.

Bankrupt Roberts had negotiated prior loans from the bank through Heinritz as assistant cashier, and he testified that he had done all of his banking with that bank and that he trusted Heinritz, who had always been his banker. Roberts' testimony, which is undisputed, clearly establishes that he and his wife were acting in good faith and that they relied on Heinritz to arrange the loan transactions with the bank and to obtain Walt Neal, Inc., as a cosigner and guarantor of the loans. There is no showing that Roberts employed Heinritz as his agent or that he in any way encouraged or induced Heinritz to defraud the bank or to violate his duty to the bank. Roberts had no direct negotiations with Walter Neal or with Walt Neal, Inc. The testimony clearly shows that Roberts understood that Heinritz was protecting his employer, the bank, by obtaining Walt Neal, Inc., as the cosigner and guarantor of the Roberts loans. Under the evidence presented it is clear that Roberts and his wife did not participate in any collusion or conspiracy with Heinritz to defraud the bank. As there was no collusion or conspiracy to defraud between Roberts and Heinritz as the agent of the

bank, the rule regarding double agency has no application. In summary, the evidence presented does not establish that either Roberts or his wife participated in any fraud upon the bank.

■ From careful examination of all the evidence, which was undisputed, the court concludes that the bankrupts, Roberts and wife, did not participate in any fraud upon the bank and that the bank is not entitled to a constructive trust for its benefit as to the $5,000 realized from the sale of the property and laundry equipment. For the reasons herein stated the court adopts the referee's findings of fact and conclusions of law and affirms the order of the referee entered December 19, 1962. The bank may have 30 days from this date to file its unsecured claim against the bankrupts' estates. An order may be entered accordingly.